The court will proceed to the fifth case, Walker v. Wexford Health Resources. Mr. Raymer. May it please the court. David Raymer for Appellant George Walker. Your Honors, from the moment Dr. O'Basey first examined Mr. Walker, he knew he was dealing with some, quote, pretty serious conditions that were beyond his powers to treat or diagnose. Yet despite that recognition, over the course of the next three and a half years, he subjected Mr. Walker to a persistent pattern of delay and inaction. Despite referrals from Mr. Walker's UIC neurologist, it took 13 months and multiple additional requests to get MRIs. It took over a year to get to the pain clinic, and most egregiously, it took 16 months and four referrals before Mr. Walker was sent to neurosurgery, an appointment that ultimately led to a second back surgery he was deemed to require. Dr. O'Basey offered no medical explanation for these delays. Wexford had no policy in place to prevent them. Accordingly, a reasonable jury could conclude that they prolonged and exacerbated Mr. Walker's pain by postponing treatment he was deemed to require, precluded alternate treatment options in the interim, and ultimately delayed the treatment and diagnosis of Mr. Walker's POS. Under this court's precedent, that's more than enough evidence to survive summary judgment. I assume you agree that Dr. O'Basey cannot be held responsible for anything before August of 2012. Part of your timeline you're giving here, the 13 months, the 18 months, would not apply to Dr. O'Basey. The 13 months, the 16 months, that's all subsequent to Dr. O'Basey's coming to Stateville. So Dr. O'Basey is absolutely not responsible for what happened before he came to Stateville. Wexford obviously can be. Dr. O'Basey isn't. But those delays that I listed out there at the beginning, those all came from a September 25, 2013 appointment with Dr. Zeidman. Dr. Zeidman made all those referrals, and none of those things happened for over a year. And, Mr. Reimer, what exactly is the theory of your deliberate indifference claim here? Are you claiming that the failure to have the follow-up with UIC after the initial surgery caused his current condition or caused pain and suffering? What exactly is your theory on the deliberate indifference claim? Sure. It's that Dr. O'Basey was deliberately different to a conscious or he was consciously disregarded a serious risk to Mr. Walker's health. And that was shown both in the failure to immediately return him to a follow-up for the surgery but also this second set of delays and inaction that stem from the September 25, 2013 appointment. I understand the front part. What's the causation? So assume you're right. He failed to return. What did that cause? Are you saying that caused his ultimate condition? Or what's the causation? Sure. Defendants have argued that you can attribute this all to Mr. Walker's PLS. But there's evidence in the record that indicates that that's just not the case. If you go to footnote 10 at page 40 of the opening brief, there's a list of citations in the record from Mr. Walker's expert, from defendant's expert, that simply says that, look, some of what Mr. Walker had here was not caused by his PLS. Dr. Nekresh, his neurosurgeon, ultimately said he required this second back surgery to relieve some of his symptoms. Dr. Obese himself admitted a second surgery would be beneficial and would relieve some part of his problems. So you're not saying that the actions that you claim were deliberately indifferent, you're not saying that those caused his PLS, you're saying they caused other health issues? I'm trying to flesh out, regardless of what's in the briefs, I'm trying to flesh out what your theory is here because it's not clear to me based on what you've submitted. And my apologies for that, Your Honor. The theory is that it exacerbated his pain and suffering. He had, at the very least, he had PLS, he also had a spinal condition that was causing him pain and suffering. That pain and suffering was ultimately relieved by the second back surgery. That second back surgery was delayed because of Dr. Obese's delays in sending him to get MRIs, to the pain clinic, to neurosurgery, and it was also attributable to Wexford's policy of failing to have a system in place to ensure that outside treatment actually took place. So there's evidence in the record that you can't just write this all off as PLS. Actually, there were other conditions here that were causing Mr. Walker pain and suffering, and that pain and suffering was prolonged by Dr. Obese's failures and by Wexford's failures. So that's the causation there. And as we discussed in the briefs, the deliberate indifference here wasn't just attributable to Dr. Obese. It was also attributable to Wexford. Wexford did not have a policy in place at that point in time to ensure that authorized outside treatments actually took place. A reasonable jury can conclude that that exhibited deliberate indifference to a serious medical need. And I think this court held in Gleason that the failure to have a policy in the face of obvious risks can itself constitute deliberate indifference. And that case is strikingly similar to this case. In Gleason, you didn't have to be an expert to recognize the need for comprehensive coordinated care to care for inmates with chronic pain. Likewise, in this case, you don't need to be an expert to recognize the need to ensure that authorized outside treatment actually takes place in a timely fashion. If you don't, it's entirely foreseeable that that treatment will be delayed and an individual's condition and suffering will be prolonged. That's exactly what's happened here. And in Gleason, this court said that's what you need to state a deliberate indifference claim against a prison medical provider. You argued that Dr. Obese or Stateville should have been responsible or that they were responsible for the delays in scheduling at UIC. How can you put scheduling of medical procedures at a busy medical facility, how can you put the responsibility for that on somebody on the outside? You have two separate theories. I know your other one is they should have had some type of follow-up in place. So I'm focusing just on your theory that Stateville and Dr. Obese were somehow responsible for the scheduling at UIC. Sure. In the first place, that's right in Dr. Obese's job description, JA-117, I believe. He admits that part of his job description was making arrangements with outside specialists. He then testified that at other points in time he would regularly check patients' medical records. If he saw that an appointment hadn't taken place, he would follow up. There's no indication that he did so in this case. Dr. Obese was literally watching a man lose his ability to walk, talk, and use his hands in front of him. Yet he was content to wait over 16 months to send him back for an appointment that ultimately led to a surgery that relieved some of his pain. What about the fact that Dr. Obese himself, though, during this time period was really giving Mr. Walker a lot of care, giving him injection shots for his pain, seeing him repeatedly referring him to a different specialist for immediate attention when he was concerned, giving him pain medications that Mr. Walker didn't take at times? He's getting a lot of care in between there. Maybe not the care that he thinks he should have gotten at UIC, but he's getting a lot of care at the facility. And as Your Honor, I'm certain as aware, this court has repeatedly held that the provision of some medical care doesn't rule out the possibility of a deliberate indifference claim. For example, you mentioned that he had handed out some pain medications. Of course, as this court has held in Ortiz, giving a prisoner eye drops when he needs eye surgery doesn't excuse a deliberate indifference violation. Likewise, giving someone pain medication when you could address the underlying issue via surgery also doesn't excuse a deliberate indifference violation. And it's true that Mr. Walker did not take some of those pain medications, but there's plenty of evidence in the record at footnote four of the reply brief that indicates that he was in pain during this time. And the reason he didn't take some of those pain medications is because they caused constipation. Mr. Walker certainly shouldn't be put to the choice of taking pain medications or constipation when there are alternate treatment options on the table, and alternate treatment options that, as it turned out, actually relieved aspects of Mr. Walker's pain. I'd like to back up to the exhaustion argument. Certainly. It seems to me that there are several layers to the exhaustion arguments here. We have the question of the emergency grievance and whether that is all that your client had to do to fully exhaust and preserve his right to come into court. And then there's also a timeliness question that I'm not sure has been satisfactorily answered. So if you could address those. Sure. The form, just to cut to the chase since time is short, the form that was returned to him after he filed the emergency grievance in 2013, complaining about the failure to follow through on the post-op in 2011, setting aside the timeliness issue, the form itself said, this is not an emergency. You have to use the regular grievance process. And he never did. So why isn't that just a very simple failure to exhaust? Sure. And my understanding is that defendants no longer contest that Mr. Walker failed to pursue his grievances to completion, the first aspect of the exhaustion issues you specified. And I think that's absolutely correct, because this Court recognized in Thornton and subsequent unpublished decisions and a raft of district court precedent that basically says Illinois screwed up when they were drafting their prison regulations. They didn't have a rule in place that allowed a prison official to say when they deemed something non-emergency to make the offender go back through the regular grievance process. That simply wasn't allowed. This Court has repeatedly said prison officials can't make you do more than is required. So I don't think the completion issue is on the table here anymore because it's defendant's burden. On the timeliness issue, two points there quickly. This Court has repeatedly held that procedural shortcoming in a grievance process only amounts to a failure to exhaust if prison officials expressly rely on that shortcoming. And here there's no dispute that either the warden or the ARB denied Mr. Walker's grievances as untimely. But even if they did, this Court has held that deliberate indifference to a continuing medical violation is, excuse me, to a deliberate indifference is a continuing violation. And so long as the treatment being grieved is being withheld, the complaints are timely. And here, again, there's no dispute that Mr. Walker filed his grievances before he was returned to USC. But the post-op, the failure to return him to the hospital for a post-op exam is a discrete event. It's not a continuing violation. I guess I disagree. I don't think anybody's given up that argument. This Court has said that you don't have to file multiple successive grievances when you have repeated instances of the same sort of harm. What we're talking about here today is, in fact, delays in returning Mr. Walker to UIC. That's exactly what he was grieving in his grievance. JA-179, 279, he says, I'm grieving the delay in being returned to UIC. Why haven't I been returned to UIC? That's exactly the same sort of thing that's going on. And this Court has said that once you file one grievance to that effect, you don't have to keep on filing grievances. The grievance has served its purpose. But the first grievance wasn't timely. But it was timely because it was a continuing violation. And, in any event, this Court can't reach the question because the prison officials didn't rely on that grounds below. Even if it's timely as to any non-responsiveness within the 60 days, I think it's 60 days, right, prior, it's not timely with respect to the discrete act of the failure to return him for the post-op after the 2011 surgery. That's a discrete event. That's not an ongoing event. I would submit that at this time that he filed his grievance, he still had not been returned to UIC. So the harm that he was complaining of, not being returned to UIC, was still ongoing. It was a continuing violation. And Weiss v. Barbaro had all kinds of treatment in the interim, including at the hospital. He didn't have treatment back at the hospital during that interim period. He did have some treatment at that time, but he was grieving access to the specialized care at UIC that he needed. He was seen something like 30 times during that interim period. He was seen by doctors at Stateville during that period, but not by the specialists at UIC. Right. And the policy and procedure at the institution is that the hospital has to call if the hospital wants him back. And the hospital had asked for him to come back. They had asked him to come back within the three months. Well, right. But once that date had passed, and he had 60 days from that time to file a grievance, but after that we're talking about other allegations of neglect. And I'd submit, Your Honor, they're the same. Neglect doesn't even qualify. So other allegations of deliberate indifference to his ongoing medical concerns. Understood, Your Honor. And I would submit that they are of the same piece, that his grievance that he filed in April 2013 grieved the same sorts of fundamental harms that he experienced subsequently at UIC, namely the failure to return him to specialized care at UIC when they requested it. Thank you, Your Honors. Thank you. All right. Mr. Maruna. May it please the Court, James Maruna, on behalf of the defendant appellees, Wexford Health Sources, Inc., and Ghali Obeisi as the executor of Dr. Obeisi's deceased estate. This Court should affirm the District Court on all issues, both exhaustion and deliberate indifference as to Dr. Obeisi and as to Wexford. I'll turn first to the grievance issue since that's what we were just discussing here. The District Court correctly entered summary judgment in the defendant's favor because Mr. Walker failed to timely exhaust his administrative remedies and set forth in the code. As we were just discussing, he has 60 days to grieve this. His grievance in April 1, 2013, asks for a referral and discusses that I should have been sent out in 2011. This is a discreet injury. He had all the knowledge per his own testimony in 2011 to understand that he needed to go back. He said, I understood I was to go back in 90 days. I understood the grievance process, and I had a copy of an inmate offender handbook telling me about the grievance process. Yet Mr. Walker remained silent for two years. And that's important here. The actual purpose is set forth in the Supreme Court when they were interpret or the PLRA and then subsequent case law is the reason we want to force the inmate to grieve timely is that it gives the institution an opportunity to correct the defect. That serves two aims. One, hopefully it's going to reduce the number of prisoner lawsuits. Second, even if it doesn't reduce the number of prisoner lawsuits, of those that make it to litigation, we're going to have a better record when we have to go back and adjudicate this. Mr. Walker had the tools available to him. He failed to avail himself of those tools. It is untenable to allow an inmate to sit on a discreet injury for two years before bringing it to anyone's attention that he view the problem here. What about the fact that the prison did not deny it based on timeliness and under our case law, Conyers in particular, that it would not amount to failure to exhaust because they did not rely on that procedural defect? Correct. And so the issue is the reason they didn't exhaust it on timeliness is that he filed it as an emergency grievance. If we look to what Ward and Lemke testified to in this case, they're not looking for timeliness when they're screening emergencies. But does that matter? They didn't address it on timeliness for whatever reason, but our case law says if you don't address it on timeliness, you don't have the failure to exhaust issue. Correct. If it's decided on the merits without waiving a procedural argument, then the procedural argument is waived. There's no dispute to that. But does it have to be decided on the merits as well? My understanding and review of the case law is that correct. If you do decide it on the merits, you waive the argument, but here there was no discussion on the merits. They told him it doesn't scream immediacy because you're claiming something that should have occurred two years ago, resubmitted through the normal channels, and he didn't do so. Right. And I'm having a little difficulty pinning down your argument, whether it goes to the use of the emergency procedure and then the grievance comes back saying it's not an immediate emergency, use the regular process, and he doesn't. Are you relying on that anymore as part of your argument, or are you relying simply on the question of untimeliness? Untimeliness, Judge. I agree with what Judge St. Eve said, that this court has ruled that there was a defect in the code at the time that it existed back in 2013. It was remedied, I believe, subsequently in 2017. Right now we're relying solely on this is a discrete injury. It does not continue indefinitely, and he failed to exhaust himself and avail himself of the remedies. And it's particularly important here because all the testimony in this case, from Dr. Obese, Dr. Zeidman, Dr. Davidson, is that the purpose of this post-surgical follow-up is to check the wound. I'm still a little confused. You said it doesn't scream immediacy, meaning it's not an emergency, use the regular process, but now you're saying that's not what you're arguing. Correct. We're saying that this issue should have been grieved within 60 days of the discrete injury. What about the language in his April 1st grievance that goes beyond just the I haven't been returned to UIC for a follow-up, the language that talks about the pain that he's in and the other health issues and those issues not being addressed? Well, those would actually relate to the new conditions that were developing the PLS. It's important to remember that when he does go back to neurosurgery in 2013, the neurosurgeons actually indicate there were no complications or issues stemming from that 2011 surgery. So to the degree that that would be a new issue not related to the degenerative back conditions, that would be on the PLS aspect. Ultimately, our opinion as to this is that Mr. Walker failed to grieve. Turning us to deliberate indifference as to Dr. Obese. I'm sorry, let me go back to that for one minute. To the extent those relate to new issues, are they timely? Certainly. To the degree he is grieving something that would relate to the PLS aspects that had developed sometime in 2013 is what neurosurgery notes seem to indicate, yeah, they would be timely, absolutely. What about to the general pain from the PLS or from other health conditions that he identifies in there? It can relate back because as we talked about in my opponent's discussion here, he's seen multiple times in reports that the pain resolved, and neurosurgery also found that the pain resolved from 2013. So to the degree there was pain or complications from the 2011 issues, it resolved in a new period than began the day that that new segment began. Turning us to deliberate indifference as to Dr. Obese, Dr. Obese lacked subjective notice of an excessive risk of harm, and he never acted with the required culpability. At the outset, we note that Mr. Walker testified that Dr. Obese never intended to harm him, so we're simply asking whether the record before the court shows criminal recklessness in the criminal sense against Dr. Obese. First, Dr. Obese isn't liable for the prior issues that occurred at the prison before he began working there, and I think counsel conceded that, but he did leave open that Dr. Obese should have immediately referred the patient to neurosurgery during the first examination in 2012. Dr. Obese performed a competent examination that day. At first, the patient reported three issues, none of them related to his back. The critical one was leg weakness. As Dr. Davidson, the Northwestern neurologist, said, when you mention leg weakness, there's three causes, central nervous system disorder, muscles, or a peripheral nervous system disorder. Dr. Obese tested the patient's reflexes in the lower extremity, which is how you tell. How the reflexes respond indicates where the problem is. If the reflexes are absent or slow, it indicates peripheral nervous system, which would be in the low back, the area of the surgery. If the reflexes are normal, it's muscles, not a neurologic issue. If the reflexes are brisk or rapid, it's central nervous system, brain, cervical, spine. So Dr. Obese saw in 2012, even if he looked back in time and saw the outstanding referral, he saw a patient who made no active back complaints and whose objective symptoms were not suggestive of an issue with the lower back. He decided to run a blood test to rule out a muscle disorder and then planned to refer the patient to neurology, which he did. The patient then goes to neurology, and a process for care is put in place from that date. Second, Dr. Obese is not liable for scheduling issues here. He testified, one, that he has nothing to do with the actual scheduling beyond putting the referral and getting it set up. Two, he has no control over UIC. Now, counsel did mention that occasionally Dr. Obese said, yes, if I'm aware of a problem, I'll go certainly do something about it. But there's no evidence here that any of the timelines that counsel is discussing were excessively harmful. In fact, as the district judge noted, counsel's expert even said Dr. Obese was asked in his deposition, did Dr. Obese deliberately or recklessly ignore a risk of serious harm to the patient? And the expert didn't offer that opinion. So there was nothing here in the timelines, if Dr. Obese had notice of them, that suggest a problem that required remedy. Second, Dr. Obese never denied any medical treatment here. He approved everything that was ultimately recommended for this patient. Thus, we're left arguing a claim of delayed treatment. And it's important because delayed treatment discusses, requires verifying medical evidence in the record, and the patient simply lacks that evidence. And then I'd like to turn finally to the totality of the care argument. The district court, I think, relied very heavily on this. This is a record here where this patient received a significant amount of care. He may ultimately disagree with the care. He may ultimately disagree with the timelines. But it's not that Dr. Obese was doing nothing. He believed this was a neurological issue, and he was treating a neurological issue, which ultimately, four years later, it was diagnosed as being. Turning to Wexford, the district court correctly held that the plaintiff failed to create a question of fact as to a Monell claim against Wexford. Initially, we note that because our argument is there's no underlying deliberate indifference against Dr. Obese, the claim against Wexford would fail as well. Second, plaintiff claims that Wexford didn't have a policy in place related to monitoring outpatient referrals. That's not actually accurate. They did. They just changed the policy for how they were monitoring. Dr. Fisher, the 30B6 witness, said that began in 2013, concluding in 2014. They changed the policy, but they had a policy in place at the time. And actually, the reason I believe he testified they were changing it was that it was retroactive referrals, which isn't the actual situation that was going on here. Finally, there's no evidence that this was a widespread problem. The plaintiff's own record belies that claim. While counsel may focus the spotlight on what he calls a 16-month delay in neurosurgery, he dimmed the lights on the one-month time it took to get to neurosurgery in the first place after neurology made the referral, and also as to the MRI where it took a month, the EMG where it took a month, the myelogram where it took three months. The record shows that this patient received consistent care and no Wexford policy was the driving force. That being said, I'm out of time. I'll defer to the briefs. Thank you. All right. Thank you. I believe your time has expired, but you may have two minutes for rebuttal. Quickly, Judge Saineev, you're correct. With respect to exhaustion, this Court does have a rule. Prison officials have to rely on the grounds to deny it. And in this case, they simply did it. There's no dispute that they didn't rule Mr. Walker's grievances untimely. And, indeed, because they ruled on a grounds that is now even conceded by defendants to be improper, it would be particularly unjust to deny Mr. Walker his ability to proceed here. As you also noted, he grieved ongoing pain at the time, in addition to his delays in being returned to UIC. Those conditions persisted throughout Mr. Walker's treatment. With respect to Dr. Obese's responsibility for scheduling, again, this is the same argument that Wexford and Dr. Obese advanced in the Quinn District Court case. The district court there found that on essentially the same facts that, no, Dr. Obese did have responsibility for scheduling. He should have been able to see on the charts that these appointments were required. And his failure to follow through constituted at least a question for the jury on deliberate indifference. Defendants argued that Dr. Obese never did anything, never failed to do something that UIC asked. That's just not true. In the first place, he repeatedly returned Mr. Walker to UIC late. And moreover, with respect to the MRIs, Dr. Zeidman initially ordered a thoracic and a cervical MRI. Dr. Obese only initially gave him a thoracic and required, excuse me, initially gave him a cervical and required additional follow-up before the second MRI was provided. And finally, with respect to the Minnell claim, it's just not true that at the time This is at JA 137 through 141 of the record. Dr. Fisher testified that they tracked appointments that actually happened. Of course, the problem here was that an appointment didn't happen. So for all those reasons, Your Honors, I urge you to reverse the district court and give Mr. Walker his day in court. Thanks very much. Thanks to both counsel. The case is taken under advisement.